# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 08-0719-WS-B ) |
| E&K TRUCKING, INC., *et al.*, | ) ) ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on defendant George Dial's Motion to Dismiss (doc. 41) and his Statement of Objection (doc. 44) to the Magistrate Judge's Report and Recommendation (doc. 39). The issues presented in these filings have been briefed and are now ripe for disposition.

**I. Background.**

In December 2006, George Dial allegedly sustained permanently disabling injuries in Monroeville, Alabama when a load of lumber fell on him after a safety footing device on a trailer collapsed.[1] This incident has spawned a pair of lawsuits, including one in this District Court and one in the Circuit Court for Clarke County, Alabama.

> *A. The State and Federal Lawsuits.*

In the Clarke County action, which commenced in July 2008, Dial sued Willie Kidd and E&K Trucking, Inc., on theories of negligence and wantonness. In bringing such claims, Dial alleged that he "was employed as an independent contractor and/or employee" of Kidd and E&K, and that they "negligently and/or wantonly maintained [the] safety footing device which caused the incident." (Doc. 48, Exh. A, ¶¶ 7, 10.) Dial also interposed a claim against

---

[1] In one pleading, Dial described these events in the following terms: "While waiting to attach a loaded trailer, the safety footing device collapsed causing trailer to tilt and the load to come down on Plaintiff. The load hit Plaintiff's back and caused him to become disabled." (Doc. 48, Exh. A, ¶ 8.)

defendant Kidd under Alabama Code § 25-5-11(c)(2), alleging that Kidd had breached a duty to repair or maintain the trailer's safety guard provided by the manufacturer. (*Id.*, ¶¶ 19-20.) In answer to Dial's complaint, Kidd and E&K denied all material allegations and invoked the affirmative defenses of improper venue, immunity, contributory negligence, assumption of the risk, set-off, and last clear chance. (Doc. 48, Exh. B.) The Clarke County action remains pending today, although it has been stayed.

In December 2008, nearly five months after Dial filed the state court action, Progressive Specialty Insurance Company brought a declaratory judgment action in this District Court against named defendants E&K, Kidd, and Dial. In its Complaint (doc. 1), Progressive alleged that it had issued a policy of commercial auto insurance to E&K, that Dial was a listed driver on the policy, and that the truck Dial was operating at the time of the accident was an insured automobile under that policy. Nonetheless, Progressive seeks a declaration that it is owes no duty to defend or indemnify E&K or Kidd in relation to the Clarke County action because "Dial was acting as an employee of E&K and Kidd at the time of this accident," such that E&K and Kidd "are not entitled to liability coverage for any actions filed against them by Dial." (Doc. 1, ¶ 10.)[2] On its face, the Progressive policy excluded coverage for bodily injury to E&K employees injured within the course of their employment. Accordingly, the singular question presented in this declaratory judgment action is whether Dial was an employee (in which case the Progressive policy would appear to exclude coverage) or an independent contractor (in which case the cited exclusions to coverage would not apply) with respect to E&K and Kidd. Progressive's Complaint identifies no other types of policy exclusions or other provisions that it contends would excuse it from defending and indemnifying E&K and Kidd in the underlying state court action.

### B. *Progressive and the Stay of the Clarke County Action.*

Progressive was not initially joined as a party in Dial's state court lawsuit. However, in January 2009, Progressive obtained leave to intervene in the Clarke County action "for the

---

[2] Specifically, Progressive invokes a policy exclusion for obligations for which an insured "may be held liable under workers' compensation," as well as an exclusion for bodily injury to the "employee of any insured arising out of … [t]hat employee's employment by any insured." (Doc. 1, ¶ 10.)

purpose of filing a motion to stay the proceedings." (Doc. 48, Exh. C, at 1.) It appears that no party has asserted any causes of action against Progressive in the state court action, nor has Progressive filed a complaint in intervention in that case to join any claims against any other party. The state court judge granted Progressive's request for intervention on January 15, 2009. (Doc. 48, Exh. E.)[3]

Contemporaneously with its motion for intervention, Progressive filed a motion to stay Dial's lawsuit against E&K and Kidd. The motion to stay expressly identified the pending declaratory judgment action in this District Court, and alleged that "[i]t will promote judicial economy and efficiency to first have a resolution of the coverage issues before the parties incur the expense of preparing for trial and conducting the trial of this case." (Doc. 48, Exh. D, ¶ 3.) The state court evidently deemed this contention persuasive, inasmuch as it granted Progressive's motion to stay by endorsement on April 13, 2009. (Doc. 48, Exh. F.) Thus, the Clarke County Circuit Court has voluntarily stepped aside to allow this District Court to resolve the insurance coverage issues posed by Progressive before authorizing the state court action to resume. The Court's understanding is that the Clarke County action remains stayed today, awaiting resolution of these declaratory judgment proceedings.

### C. *E&K's Pattern of Noncompliance and Nonparticipation.*

The most significant development to date in this declaratory judgment action concerns the status of E&K. Progressive filed a return of service (doc. 5) reflecting service of process on E&K via certified mail on January 10, 2009. When E&K and Kidd did not answer or respond to the complaint in a timely manner, the Clerk of Court entered a default (doc. 12) against both defendants on February 18, 2009, pursuant to Rule 55(a), Fed.R.Civ.P.[4]

---

[3] This is so, despite the requirement that a motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Rule 24(c), Ala.R.Civ.P. By all appearances, Progressive has never filed a pleading setting forth any claims or defenses in the Clarke County action.

[4] Defendant George Dial also failed to file an answer or other responsive pleading for quite some time and, indeed, did not answer the Complaint and Amended Complaint until March 9, 2010, some 13 months after Progressive first returned service on him. (*See* docs. 7, 34.) Nonetheless, the Clerk of Court did not enter a default against Dial in the interim for the simple reason that Progressive did not request same. To this day, Dial apparently denies that he has been properly served with process in this action.

Thereafter, this action was delayed for several months upon the revelation that there were ongoing Chapter 11 bankruptcy proceedings initiated by E&K. (Doc. 14.) On September 8, 2009, however, Magistrate Judge Bivins entered an Order (doc. 23) providing for this litigation to move forward because the Bankruptcy Court had granted Progressive's request for relief from the automatic stay to litigate this declaratory judgment action. A short time later, E&K submitted a letter (authored by Kidd) stating that E&K lacked the means to obtain counsel and that the company no longer exists. (Doc. 26.) On February 26, 2010, Judge Bivins entered an Order in which she (i) cited appropriate authority for the proposition that corporations such as E&K are forbidden from appearing in federal court *pro se*, (ii) indicated that E&K must obtain counsel on or before March 22, 2010, and (iii) cautioned E&K that failure to comply in a timely manner "could result in sanctions, including the entry of a default judgment." (Doc. 30, at 3.) E&K did not obtain counsel; instead, Kidd simply refiled his previous letter stating that E&K could not afford a lawyer and did not exist. (Doc. 35.)

In light of the foregoing circumstances, Magistrate Judge Bivins entered a Report and Recommendation (doc. 39) on April 16, 2010, recommending entry of default against E&K for failure to comply with her directive that it obtain counsel.[5] Neither E&K nor Kidd has submitted objections to that Report and Recommendation; however, Dial has done so.

---

[5] In so doing, Judge Bivins suggested that the February 18, 2009 Clerk's Entry of Default against E&K was ineffective because it "did not take into account the fact that E&K had filed a Chapter 11 Bankruptcy Petition" and Progressive had not obtained relief from the automatic stay prior to seeking that default. (Doc. 39, at 3.) This Court agrees. The record reflects that E&K had filed for Chapter 11 protection in the U.S. Bankruptcy Court for the Southern District of Alabama on May 8, 2008 (doc. 10, Exh. A, at 3), and that Progressive was not authorized by the Bankruptcy Court to commence this litigation against E&K thereafter. Accordingly, the Clerk's Entry of Default (doc. 12) dated February 18, 2009 is **set aside** as to defendant E&K, inasmuch as E&K was at that time protected by the automatic stay provisions of 11 U.S.C. § 362. Nothing herein rescinds or modifies the Clerk's Entry of Default as to defendant Willie Kidd; to the contrary, the Court specifically finds that Kidd remains in **default** today and that he is barred from participating in these proceedings as to liability except insofar as he may petition the Court to set aside the default pursuant to Rule 55(c), Fed.R.Civ.P. *See, e.g., Tyco Fire & Sec., LLC v. Alcocer*, 2007 WL 542583, *3 (11th Cir. Feb. 22, 2007) ("The entry of a default against a defendant … severely limits the defendant's ability to defend the action."); *Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp.2d 782, 783 (E.D. Tex. 2006) ("The effect of the entry of default is that it cuts off the defendants' right to appear in the case with respect to liability issues.").

**II.     Dial's Motion to Dismiss.**

Logically, it makes sense to address Dial's Motion to Dismiss prior to considering his Objections to the Report and Recommendation. After all, if the Motion to Dismiss is granted, this entire action will evaporate, thereby mooting Dial's stated concerns as to the Report and Recommendation. The premise of Dial's Motion is that this Court should exercise its discretion to refrain from hearing this declaratory judgment action because of the pendency of the Clarke County action, in which Dial contends the same or similar legal issues have been joined by and between the same parties. Progressive disputes the existence of any such overlap.

*A.     Governing Legal Principles.*

It is well-settled that the Declaratory Judgment Act (under which Progressive brought this action) is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005); *see also Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) ("The Supreme Court's decision in *Wilton* ... vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action."). "The desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, 2008 WL 5412937, *2 (S.D. Ala. Dec. 29, 2008) (quoting *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000)).

Nearly seven decades ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). *Brillhart* admonished lower courts scrupulously to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Id.* In the wake of *Brillhart*, courts in this Circuit have long recognized that

they have discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982); *see also Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000) ("A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues.").

### B. *Exercise of Discretion using* **Ameritas** *Guideposts.*

In *Ameritas Variable Life Ins. Co. v. Roach*, the Eleventh Circuit furnished district courts with detailed guidance in how to wield their *Wilton/Brillhart* discretion under the Declaratory Judgment Act in the presence of parallel state proceedings. *Ameritas* emphasized the importance of balancing interests of federalism, comity, and efficiency in determining whether to hear a declaratory judgment action in those circumstances. 411 F.3d at 1330-31.[6] To assist district courts in this endeavor, *Ameritas* promulgated a non-exhaustive set of "guideposts" to be considered, including: (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action amounts to procedural fencing; (v) whether a ruling in the federal action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law dictates a resolution of the declaratory action. *See id.* at 1331; *see also Lexington Ins. Co. v. Rolison*, 434 F. Supp.2d 1228, 1238-44 (S.D. Ala. 2006) (applying *Ameritas* guideposts in context of declaratory judgment action filed by insurer where putative

---

[6] These considerations have been echoed by other appellate courts. *See, e.g., Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (federal court "should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation"); *Mitcheson v. Harris*, 955 F.2d 235, 237-39 (4th Cir. 1992) (citing as reasons to dismiss declaratory actions the philosophy of judicial federalism, as well as pragmatic concerns of efficiency and comity).

insured had filed state court action against insurer based on large money judgment against insured after insurer failed to defend insured).

Upon careful analysis of the *Ameritas* factors, the Court concludes that they militate strongly in favor of denying Dial's Motion to Dismiss.[7] With regard to "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts," *Ameritas*, 411 F.3d at 1331, that interest is weak here, given that the presiding judge in the Clarke County action expressly deferred to a federal court's resolution of those issues by granting the stay requested by Progressive. Surely, he would not have done so if there were a compelling state interest in having Alabama courts decide these issues. As for "whether the

---

[7] The parties' briefs omit any discussion of *Ameritas* principles; instead, Progressive focuses its opposition exclusively on arguments that this action and the Clarke County action do not share common issues and that Dial's Motion to Dismiss is untimely. Neither of those objections is persuasive. To be sure, there is some question as to whether the Clarke County action technically qualifies as a parallel state action for *Wilton/Brillhart* purposes. *See, e.g., State Farm Fire and Cas. Co. v. Knight*, 2010 WL 551262, *3 (S.D. Ala. Feb. 11, 2010) (collecting cases as to what constitutes "parallel state court action" in *Wilton/Brillhart* abstention context). But notwithstanding Progressive's stubborn insistence to the contrary, it is absolutely clear that the question of whether Dial was an employee or independent contractor (which is the centerpiece of this declaratory judgment action) has been joined in, and is integral to, the Clarke County action. In the state court action, E&K and Kidd have expressly pleaded immunity as a defense. If Dial was their employee, then E&K and Kidd would enjoy immunity from his claims for injuries sustained in the course of his employment, as a matter of Alabama law. *See, e.g., Parker v. Thyssen Min. Const., Inc.*, 428 So.2d 615, 617 (Ala. 1983) ("It is well-settled that an action brought under our Workmen's Compensation Act is the exclusive remedy in situations where the employee sues his employer for injury in the course of his employment."); *Slagle v. Reynolds Metals Co.*, 344 So.2d 1216, 1217 (Ala. 1977) (workers' compensation act "[w]ithout question … provides immunity for an employer for injuries arising out of and in the course of employment"). Thus, both this declaratory judgment action and the Clarke County action confront precisely the same question, to-wit: Dial's status as an employee or independent contractor.

As for Progressive's alternative argument that the Motion to Dismiss is time-barred because it postdated Dial's answer, this contention is soundly refuted by the text of Rule 12 and interpretive case law. *See, e.g.,* Rule 12(h)(2), Fed.R.Civ.P. (defense of failure to state a claim on which relief can be granted may be raised in a pleading, by motion under Rule 12(c), or at trial); *Vanzant v. Washington Metropolitan Area Transit Authority*, 557 F. Supp.2d 113, 116 n.1 (D.D.C. 2008) ("as a defendant may move for failure to state a claim at any time before the end of trial, and as the plaintiff has had ample notice as well as an opportunity to respond, the court cannot discern any prejudice in considering the argument on the merits"). The Motion to Dismiss is not untimely.

judgment in the federal declaratory action would settle the controversy," *id.*, it certainly could. If this Court were to determine that Dial was an employee of E&K and Kidd and that his complained-of injuries were suffered in the course of that employment, that determination could be conclusive as to both this federal declaratory action (in that Progressive's policy exclusion would bar coverage) and the Clarke County action (in that E&K and Kidd's immunity defense would be meritorious and Dial would be limited to worker's compensation remedies).[8] Moreover, it cannot seriously be disputed that "the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue," *id.*, so as to favor denial of *Wilton/Brillhart* abstention. The parties obviously require clarification as to Dial's employment status, and this action would decide just that.

Continuing on with the *Ameritas* guideposts, there is no indication in the record, and Dial does not argue, that this federal declaratory action is the product of improper "procedural fencing," *id.* In fact, Progressive was not even a party to the Clarke County action when it filed the declaratory judgment action in federal court, and believed it could not join that state court action as an active litigant because it was furnishing a defense to E&K and Kidd therein. To Progressive, filing a declaratory judgment action was not an exercise in strategic maneuvering, but appeared to be its only means of being heard at all. Further, it is quite plain that the question of "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction," *id.*, must be answered in the negative here. Far from resenting or opposing federal encroachment, the Clarke County judge invited it by voluntarily stepping aside to allow this District Court to perform the heavy lifting. As for the next *Ameritas* guidepost, there is no "alternative remedy that is better or more effective," *id.* If this Court were to abstain from hearing Progressive's declaratory action, the result would be an awkward and unproductive stalemate. Both the federal and state courts would be deferring to each other with no one stepping forward to decide the issues joined in both cases. Additionally, the Court perceives no basis for concluding that the Clarke County court is "in a better position to evaluate [the underlying] factual issues than is the federal court," *id.*, so this guidepost cannot

---

[8] Dial recognizes as much when he admits in his reply brief that "if this case proceeds and Progressive obtains a judgment from this Court that there is no insurance coverage because Mr. Dial was an employee at the time of the accident, such a ruling will collaterally estop Mr. Dial from further litigating that issue in the state court action." (Doc. 50, at 3.)

support abstention, either. Finally, while there may be a "nexus between the underlying factual and legal issues and state law and/or public policy," *id.*, that linkage is not so profound as to outweigh the other guideposts in this case, all of which point against abstention.

In short, after considering all of the relevant facts and circumstances, and paying special attention to the *Ameritas* guideposts, the Court concludes that it would not be appropriate to exercise its discretion under the Declaratory Judgment Act to abstain from hearing Progressive's claims because of the pendency of parallel proceedings in state court. The essential point is this: The state court has clearly and unambiguously signaled that it wants the federal court to decide the insurance coverage issues raised by Progressive's Complaint, even where those issues overlap or duplicate claims and defenses presented in the Clarke County action. The state court having ruled that Dial's claims against Kidd and E&K will be stayed until this federal declaratory action is concluded, it would be the height of folly for this Court to volley the ball back across the net to the Clarke County court, effectively saying, "No, after you. I insist." Such a game of "hot potato" would benefit no one. For all of these reasons, the Court will not exercise its discretion under *Wilton*/*Brillhart* principles to abstain from hearing Progressive's declaratory action because of the pendency of related state court litigation. Accordingly, Dial's Motion to Dismiss (doc. 41) is **denied**. This action will proceed at this time.

### III.    Dial's Objections to the Report and Recommendation.

The remaining legal issue ripe for disposition at this time concerns Dial's objections to the Report and Recommendation. As noted *supra*, the Magistrate Judge has recommended that a default be entered against E&K because that defendant "has failed to comply with the Court's directive to secure counsel" and has wrongly assumed "that financial hardship somehow relieves it of the obligation to defend this action." (Doc. 39, at 3-4.)

From review of the court file, it is absolutely clear that (i) E&K disregarded the Magistrate Judge's specific directive that it retain counsel in this action; (ii) E&K never filed an answer or other responsive pleading, despite being served with process more than a year ago; and (iii) E&K exhibited unwillingness to defend against or participate in this action, instead proffering vague protestations that it does not know why its insurance carrier sued it and it does not have any money. The conclusion that E&K has no intention of defending itself in these proceedings is underscored by its failure to object to the Report and Recommendation recommending that it be defaulted. There is ample authority for the proposition that entry of

default against E&K would be an appropriate sanction under these circumstances. *See, e.g., Equity Lifestyle Properties, Inc. v. Florida Mowing and Landscape Service, Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) ("A district court need not tolerate defiance of reasonable orders."); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("A court may impose sanctions for litigation misconduct under its inherent power."); *In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Atlantic Recording Corp. v. Ellison*, 506 F. Supp.2d 1022, 1025-26 (S.D. Ala. 2007) ("While modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party.") (citation omitted).

Faced with unmistakable evidence of noncompliance with court directives by its recalcitrant co-defendant, Dial nevertheless objects to the Report and Recommendation. Interestingly, Dial makes no pretense of justifying or excusing E&K's behavior, and does not maintain that the sanction of default is impermissible in these circumstances. Instead, Dial's sole objection is that, if E&K "is not interested in defending against Progressive's suit, defendant Dial should be permitted to litigate the coverage issues." (Doc. 44, at 2.) The timing and posture of this argument are perplexing. After all, the Report and Recommendation did not purport to adjudicate Dial's rights as a defendant joined in this declaratory judgment action since its inception. (*See* doc. 1.) The Magistrate Judge offered no opinions as to whether Dial is or is not entitled to be heard on the coverage issues presented in Progressive's Complaint. Furthermore, Dial identifies no authority for the proposition that entry of a default against E&K would somehow compromise or impair Dial's ability to litigate the insurance coverage issues. By all appearances, if indeed Dial has a right to be heard on the coverage issues presented in this matter, that right is distinct from and independent of E&K's status in the lawsuit, and would therefore survive any default entered against E&K. Certainly, Dial's Objections do not identify any contrary authority.[9] The net result is that it is difficult to perceive -- and Dial has failed to explain -- how E&K's default would affect him at all vis a vis coverage issues.

---

[9] The parties' briefs on this subject focus on the Eleventh Circuit's decision in *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308 (11th Cir. 2005). The *Mt. Hawley* panel addressed the right of a third-party claimant to intervene in a declaratory judgment action between insurer and insured. *Mt. Hawley* involved a specific, narrow application of Rules
(Continued)

Simply put, Dial has not come forward with any persuasive reason why the Court should excuse E&K's pattern of disregarding court orders and refusing to participate in this litigation. Nor has Dial demonstrated that its ability to litigate coverage issues will be diminished or destroyed if a default is entered against E&K. The Court finds that the Report and Recommendation is well-taken, that the severe sanction of default is appropriate given the circumstances presented here, and that lesser sanctions would be inadequate. Accordingly, the Report and Recommendation (doc. 39) is **adopted** as the opinion of this Court. Dial's Statement of Objection (doc. 44) is **overruled**, and **default** is hereby entered against defendant E&K Trucking, Inc., based on its failure to comply with judicial directives to secure counsel, as well as its total lack of participation in this lawsuit.

Notwithstanding the parties' briefing on the subject, there has been no motion that would place before the Court the issue of Dial's standing to litigate coverage issues with Progressive in this action. Dial is a named defendant who has filed an answer. The claims joined between Progressive and Dial herein will proceed. In the absence of a proper motion and full briefing, the Court will not embark on a tangent here by rendering opinions as to a collateral issue raised by the parties in the context of objections to a Report and Recommendation that was entirely silent on the subject of Dial's rights (or lack thereof) to litigate the insurance coverage issues.[10]

---

24(a)(2) and 24(b), Fed.R.Civ.P. By contrast, Dial is not attempting to intervene here. He does not have to intervene, because Progressive named him as a defendant at the outset of this case. As such, whether Dial could or could not meet the prerequisites of Rule 24 to intervene had Progressive not named him as a defendant is not a helpful inquiry. More generally, Progressive's current position that Dial has a "purely speculative" interest in the insurance policy at issue, such that he has no standing to litigate coverage issues, cannot readily be reconciled with Progressive's decision to name Dial as a defendant in this declaratory judgment action in the first place. (Doc. 49, at 7.) If Progressive believes that Dial has no cognizable legal right to be heard on the insurance coverage issues raised in the Complaint, then why did Progressive invite Dial to the party by suing him?

[10] Should either party see fit to file such a motion, it may be helpful for them to address Dial's beneficiary status vis a vis the policy as a listed driver operating an insured vehicle. It may also be beneficial for the parties to consider and apply authorities under Alabama law concerning direct actions between third-party judgment creditors and insurers. *See, e.g., Knox v. Western World Ins. Co.*, 893 So.2d 321, 323 (Ala. 2004) (injured third party lacks standing to bring declaratory judgment action against insurer until final judgment has been entered against insured, because Alabama law forbids injured third party "from bringing a direct (Continued)

**IV.    Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Defendant George Dial's Motion to Dismiss (doc. 41) is **denied**.
2. The Clerk's Entry of Default (doc. 12) dated February 18, 2009 is **set aside** as to defendant E&K Trucking, Inc., inasmuch as it is now clear that E&K was subject to the protections of the automatic stay in bankruptcy pursuant to 11 U.S.C. § 362 at that time.
3. Defendant Willie Kidd remains in **default**, and the Clerk's Entry of Default (doc. 12) remains in full force and effect against him.
4. Defendant George Dial's Statement of Objection (doc. 44) is **overruled**, and the Report and Recommendation (doc. 39) entered by the Magistrate Judge is **adopted** as the opinion of this Court.  Default is hereby **entered** against defendant E&K Trucking, Inc. for the reasons stated *supra*.
5. In light of the pendency of Progressive's claims for declaratory judgment against defendant Dial, with such claims involving the same coverage issues joined against the defaulted defendants, no default judgment will be entered against E&K or Kidd until those remaining claims have been resolved.  *See generally Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("even when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the

---

action against an insurer until such time as there is an unpaid judgment against the insured"); *Maness v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 416 So.2d 979, 981 (Ala. 1982) ("Once an injured party has recovered a judgment against the insured, the injured party may compel the insurer to pay the judgment.").  Also, even cursory review of applicable case law reveals circumstances in which Alabama courts have grappled with the question of the impact of an insured's default in a declaratory judgment action on an injured party's rights against the insurer. *See generally Casualty Reciprocal Exchange v. Wallace*, 189 So.2d 861, 864 (Ala. 1966) (characterizing as "manifestly unsound" insurer's argument "that a decree *pro confesso* rendered against an insured in a declaratory judgment suit brought by the insurer cuts off all rights of the injured parties").  It is not the place of a federal court to instruct the parties on how to go about litigating their cases.  However, from these and other strands of case law, the Court is confident that the non-defaulted parties to this action will be able to devise appropriate strategies for how this case (and the parallel action in state court) should proceed.

other defendant prevails on the merits"). At that time, the Court will entertain any properly filed motion for default judgment by Progressive, and such motion must specify with particularity the form of default judgment sought.

6. The Clerk's Office is **directed** to mail a copy of this Order to E&K and Kidd at the following address: 86 Kidd Road, Lower Peachtree, AL 36571. The defaulting defendants are cautioned that, in light of their defaulted status, they are not entitled to, and will not receive, further notice of these proceedings, absent prompt affirmative steps on their part to set aside the default against them pursuant to Rule 55(b), Fed.R.Civ.P.

7. The Clerk's Office is **directed** to refer this matter to the Magistrate Judge for entry of a Rule 16(b) Scheduling Order, inasmuch as a Rule 26(f) Report (doc. 36) was filed on April 1, 2010.

DONE and ORDERED this 11th day of June, 2010.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE